IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MEGAN SKUBAL, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-936 (AJT/TCB) |
| | ) | |
| KEVIN R. McCARTHY, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## ORDER

Appellants Megan Skubal and Thomas Skubal have appealed the Bankruptcy Court's Order Denying their Motion to Reconsider dated August 8, 2017, [BK Doc. No. 108].[1] Appellee Kevin McCarthy is the Chapter 7 trustee appointed to Ms. Skubal's Chapter 7 bankruptcy case ("the Trustee"), whose law firm also served as Trustee's counsel. This appeal revolves around, although it is not based directly upon, the trustee's attorneys' fees awarded by the Bankruptcy Court in its Final Report Order, [BK Doc. No. 102]. In that regard, Mr. Skubal filed an objection to the fee award, principally on the grounds that the Trustee improperly pursued the creditor claims that generated the fees, which the Bankruptcy Court overruled on the grounds that Mr. Skubal lacked standing to challenge the Trustee's fee request. Mr. Skubal, joined by Ms. Skubal, then filed a motion to reconsider that ruling, which the Bankruptcy Court denied. Appellants have appealed only with respect to the Bankruptcy Court's Order denying Appellants' motion to reconsider.

As discussed below, the Bankruptcy Court did not abuse its discretion in denying the motion for reconsideration. However, the Court has substantial concerns whether, in pursuing the

---

[1] Citations to the bankruptcy record are designated [BK Doc. No. __].

claims that he did and in the process generating substantial administration costs, the Trustee properly discharged his duties and obligations to the parties and the Court. Although these issues were raised below, the Bankruptcy Court did not make any findings pertaining to them. Accordingly, the Bankruptcy Court's Order on the Motion to Reconsider is AFFIRMED with respect to the issues properly raised on appeal; and in discharge of the Court's supervisory powers, this case is REMANDED to the Bankruptcy Court for further proceedings and express findings concerning whether the Trustee properly exercised his duties and responsibilities.

## I. BACKGROUND

Megan Skubal (the "debtor" or "Ms. Skubal") filed a Chapter 7 bankruptcy on October 11, 2013.[2] Kevin McCarthy was named her Chapter 7 bankruptcy trustee and his law firm also served as counsel to the trustee. The estate's primary assets included Ms. Skubal's interest in two parcels of real estate with substantial equity jointly owned with her father, Thomas Skubal ("Mr. Skubal"): the North Carolina home of Mr. Skubal and an investment property in North Carolina (collectively, the "Properties"). Prior to 2013, Mr. Skubal had transferred the Properties into his and Ms. Skubal's names as joint tenants with rights of survivorship for estate planning purposes.[3] Upon becoming trustee, the Trustee asked the Bankruptcy Court to call for proofs of claim, which it did on January 16, 2014. On January 23, 2014, the Chapter 7 Trustee's law firm,

---

[2] As stated by the U.S. Trustee in its Objection to Claim 4 Filed by Chapter 7 Trustee [BK Doc. No. 47], Ms. Skubal is an employee of the U.S, Patent Office who "was forced to file bankruptcy in order [sic] as the amount of her debts threatened the security clearance that she required for her job at the Patent Office." U.S Trustee's Objection to Claim 4 Filed by Chapter 7 Trustee 2, n. 1; *see also* Claims Objection Hrg [Doc. No. 3] 21:20–21 (where the U.S. Trustee advised the Bankruptcy Court that this case was filed, "in part, because she [the debtor] had a security clearance that was at jeopardy, because she had these debts . . . .").

[3] In its brief. the Appellants state the following with respect to the transfer:
> Some years prior to the bankruptcy filing . . . Mr. Skubal transferred his home in Florida and an investment property he owned in North Carolina into the name of he and his daughter as joint tenants with right of survivorship for estate planning purposes. Prior to the transfer, Mr. Skubal held both properties in his name alone. At the time of the transfer, Mr. Skubal was disabled and in poor health with an uncertain prognosis. At no time did his daughter contribute any funds toward the purchase or maintenance of these properties.

[Doc. No. 5] ("Appellants' Br.") 2; *see also* U.S Trustee's Objection to Claim 4 Filed by Chapter 7 Trustee ¶¶ 2–5.

2

McCarthy & White, PLLC, filed an employment application, which the Bankruptcy Court granted on February 4, 2014.

Only two creditors responded with proofs of claim totaling $569.71 by the April 16, 2014 deadline. Following the filing deadline, the Trustee communicated with two unsecured creditors who did not file proofs of claim to urge them to file claims: (1) ACS Education Services, a student loan lender, with respect to an outstanding but current loan in the amount of $46,171.47 (the "ACS claim"); and (2) Midland Credit Management, which had purchased a Citibank Platinum Card indebtedness in the amount of $25,818.06 (the "Midland claim"). Neither filed proofs of claim. Nevertheless, on May 8, 2014, the Trustee advised the U.S. Trustee that he planned to file proofs of claim on behalf of these two creditors. On May 9, 2014, the U.S. Trustee advised that she would object to the Trustee's filing proofs of claim on behalf of these creditors under the circumstances presented. On May 15, 2014, the Trustee filed proof of claims on behalf of these two creditors, but not others who also had chosen not to file claims.[4] Then, on July 7, 2014, the Trustee filed an adversary case in the Bankruptcy Court seeking an order allowing him to sell the Properties in order to pay the debts of the estate, which consisted of the two filed creditors' claims totaling $569.71, the non-dischargeable, current ACS claim, the Midland claim, and the costs of administration. On January 26, 2015, the Office of the U.S. Trustee filed objections to both the ACS and the Midland claims [BK Doc. Nos. 46, 47] and on February 18, 2015, Mr. Skubal filed an objection to the Midland claim [BK Doc. No. 58][5] (the "Claims Objections").

---

[4] In filing these claims, the Trustee relied upon 11 U.S.C. § 501(c), which provides: "If a creditor does not timely file a proof of such creditor's claim the debtor or the trustee may file such proof of claim."

[5] The Bankruptcy Court held that Mr. Skubal had standing to make this objection because, at that point, he was a joint tenant in the properties that would necessarily have been sold to pay those claims. Claims Objections Hrg [Doc. No.3] 50:17–51:1.

The Claims Objections asserted that the Trustee lacked standing to bring these claims on behalf of those creditors and that the Midland claim was barred by the applicable limitations period. As to the ACS claim, the U.S. Trustee's brief argued that "the filing of proofs of claim without a benefit to the debtor is inconsistent with both the statutory scheme and the duties imposed on the chapter 7 trustee by the Code[,]" and there could be no benefit to the debtor, given that she was current on her student loan payments and the loan was non-dischargeable. Instead, the U.S. Trustee took the position that the Trustee was impermissibly motivated by a desire to maximize his and his firm's fees, rather than to benefit the debtor and other parties in interest. *Id.* at 9 ("It is inconsistent with the duties . . . imposed on chapter 7 trustees for Thomas Skubal to lose his property so that [the] trustee can receive a commission.").

On April 7, 2015, the Bankruptcy Court held a hearing on the Claims Objections. In response to the U.S. Trustee's position, the Bankruptcy Court raised two issues. First, "what is the source of this benefit to the debtor requirement" in Section 501(c); and second, "doesn't the filing of the [ACS claim] actually benefit the debtor, because it's a non-dischargeable debt. In other words, wouldn't the debtor want the student debt paid now and not have to make monthly payments for the next ten years, arguably." Claims Objections Hrg [Doc. No. 3] 13:3–9. As to these issues, the U.S. Trustee argued in its brief and at the hearing that the structure and legislative history of 11 U.S.C. § 501(c), along with the trustee's duties to the debtor and parties in interest, limit the trustee's discretion in bringing claims on behalf of creditors to instances where doing so would benefit the debtor. As an example of an appropriate circumstance for a Chapter 7 trustee's exercise of such discretion, the U.S. Trustee pointed to a situation where the failure to file a non-dischargeable debt would cause a debtor with assets that were substantial but less than the outstanding filed claims to emerge from bankruptcy with the non-dischargeable

debt intact, but without any assets to pay that debt since all of his assets would have been exhausted in the bankruptcy proceedings through their application to filed debts without any allocation or draw-down on the non-dischargeable debt.

Here, the U.S. Trustee argued, the Trustee's decision to pay-off a non-dischargeable debt that the creditor did not file, and force the debtor to liquidate assets for that purpose, exceeded the proper exercise of the a Chapter 7 trustee's authority since given the low value of filed claims relative to the substantial equity in the Properties, the debtor would emerge from bankruptcy with substantially all of her assets to pay the non-dischargeable, current debt and the Trustee's actions essentially arrogated to the Trustee choices and decisions that should be left with the debtor and her creditors. *Id.* at 17:2–8. The U.S. Trustee further claimed that the Trustee's decision to file and force the payoff of the ACS non-dischargeable claim was "inconsistent" with "the comprehensive distribution scheme and a comprehensive scheme for the filing of proofs of claim." *Id.* at 17:10–14.[6] In support of its position, the U.S Trustee, citing decided cases, argued that "maximizing the trustee's fee was not a proper reason for the trustee to file proofs of claim[, and] '[i]n short, there must be some reason, not constituting an abuse of discretion, and otherwise consistent with the trustee's fiduciary duties to creditors, for the filing of a proof of claim.'" *Id.* 20:4-10 (quoting *In re Thomas*, 2005 Bankr. LEXIS 3033, at *13 (Bankr. E.D. Va. 2005)). "[E]ven in . . . cases . . . where the Court approved the filing of claims by a chapter 7 trustee, no Court [has] approved [such claims] where the record was clear that the trustee was motivated . . . by some desire to increase his compensation." *Id*. at 23:1–6. According to the U.S. Trustee, "it's very difficult to find [that the trustee had a reason not constituting an abuse of discretion in filing

---

[6] The U.S. Trustee pointed out in this regard that unlike a filing under Chapter 7, a claim that is listed in a debtor's application under Chapter 9 or 11 is automatically allowed. *Id.* 18:21–25.

the ASC and the Midland claims,]" *id.* at 20:11, and "it's difficult to find that there's a benefit to the debtor." *Id.* at 25:20.

Specifically, the U.S. Trustee noted that the Midland claim was time-barred and the ASC claim could not possibly benefit Ms. Skubal, given that "[s]he was current on her student loan obligations" and "[th]e amount of her dischargeable and non-dischargeable claims is substantially less than the amount of equity in" the Properties. U.S. Trustee's Objection to Claim 4 filed by Chapter 7 Trustee 9. In that context "the cost and expense of having the . . . Chapter 7 trustee incur the legal expenses of litigating it and selling the assets substantially harms the debtor a lot more, even if she wanted to pay it outside of the bankruptcy." Claims Objections Hrg 26:1–5. Instead, "[i]t would be more efficient and more cost-effective for [the debtor] to sell the property, employ a realtor herself rather than have a Chapter 7 trustee incur over 40,000 dollars in legal expenses in litigating this case in order to do so." *Id.* at 26:1–5. The U.S. Trustee further noted that "by forcing prepayment of the debt . . . to the extent the interest rate exceeds their cost of capital," the Trustee essentially forced the creditor to bear a loss, rather than to benefit, by bringing the ACS Claim. *Id.* at 26:10–13.

In summary, the U.S. Trustee argued that the Trustee used his power to generate fees where there otherwise would be none, at the expense of the parties in interest: "[I]f the trustee had no asset[s in] the case, he would receive essentially a fee of $65. By filing these claims and in litigating them, he has incurred substantial fees that result in the debtor's losing a property that they [would] otherwise have." *Id.* at 26:22–21:1. "In view of the U. S. Trustee, [this behavior is] discordant with the purpose of the Bankruptcy Code, to provide the honest but unfortunate debtor opportunity to receive a fresh start, and move forward with their lives after the Chapter 7 process." *Id.* at 27:2–5. Concluding, the U.S. Trustee expressed its "concern, and [noted that the

6

U.S. Trustees] were created to oversee the trustees and to, essentially, audit the trustees to make sure they were acting in a way that was in accordance with the Code and fairness to the debtors, and [the U.S. Trustee] think[s] that implication is that that duty is strongly implicated by this case." *Id.* at 22:20–25.

Following the hearing on April 7, 2015, the Bankruptcy Court disallowed the Midland claim as time-barred. *Id.* at 49:17–57:10. With respect to the ASC claim, the Bankruptcy Court assumed without deciding that in order for the Trustee to file the ACS claim, there must be some benefit to the debtor. The Bankruptcy Court overruled the objections to the ACS Claim, finding that the ACS Claim was an allowable claim because there was "some benefit" to the debtor in paying it off. *Id.* at 56:17–19 ("And at the risk of stating the obvious, [the benefit is] to pay a claim that is an allowed claim, to which there is otherwise no objection."). The Bankruptcy Court made no findings concerning whether that benefit was outweighed by the harm to interested parties or otherwise addressed the U.S. Trustee's objections and concerns regarding whether the Trustee acted consistently with his duties to all interested parties.

Based on the Bankruptcy Court's rulings, on November 18, 2016, the Trustee moved for the sale of the North Carolina investment property for $45,000. [BK Doc. No. 84].[7] In order to keep the property, Mr. Skubal outbid the proposed sales price and paid $46,000.[8] In order to avoid the partition sale of his residence, Mr. Skubal then voluntarily paid off the outstanding balance on the ACS claim.

On May 17, 2017, the Trustee filed his Trustee's Final Report, [BK Doc. No. 94], which included (1) a request for his trustee's commission and expenses of $5,895.46; (2) a request by

---

[7] On February 5, 2015, the Bankruptcy Court issued an Order approving the parties' compromise of the adversary case, whereby the Trustee would be required to sell the investment property before attempting to sell the residential property. [BK Doc. No. 53].
[8] Mr. Skubal believed that the property was worth roughly $200,000, based on his investment in improving the property and the value of surrounding properties.

McCarthy & White, PLLC, McCarthy's law firm, for $34,500 in attorneys' fees incurred in McCarthy's service as counsel to the Trustee; and (3) miscellaneous costs including $4,600 paid to a realtor for the listing and sale of the North Carolina investment property that Mr. Skubal ultimately bought. With respect to the request for attorney's fees, the Final Report disclosed that a total of $57,500 in fees had been incurred, but that "[t]he Applicant has reduced its fee application by about $23,000 in order to allow a nearly 100% distribution to creditors and to obviate the sale of additional North Carolina real property owned by the Debtor and her father for the purpose of paying the Trustee's legal fees." First and Final Application for Attorney's Fees [BK Doc. No. 96] 1 n.1.

On June 13, 2017, Mr. Skubal (Ms. Skubal did not join) objected to the fee application. Objection to Trustee's Application for Payment of Attorney's Fees and Expenses [BK Doc. No. 98] ("Fees Objection"). Mr. Skubal argued that the bulk of the attorneys' fees were incurred because the Trustee pursued claims not asserted by creditors solely for the purpose of generating attorneys' fees for the Trustee's firm as counsel and generating funds for the Trustee's commission. In short, Mr. Skubal claimed that the fees incurred were not for the benefit of the estate and therefore should not be distributed from the estate. The Bankruptcy Court overruled the objection, finding (1) that Mr. Skubal lacked standing to object to the fee application; and (2) the amount of the fees was reasonable.[9] Fees Objection Hrg 7:24–8:13.

Mr. Skubal, joined by Ms. Skubal, then filed the Motion to Reconsider at issue in this appeal. In response to the Bankruptcy Court's finding that Mr. Skubal lacked standing to challenge the trustee's legal fees, the Skubals asserted that Ms. Skubal had orally promised to

---

[9] The Bankruptcy Court held that the Trustee was entitled to compensation for getting the ACS claim paid, even though Mr. Skubal paid it voluntarily. "Mr. Skubal's status as a volunteer doesn't diminish the Trustee's work here" and "but for Mr. Skubal's volunterring the payment to the student loan authority, that student loan claim would have been paid in this Chapter 7 case . . . ." Fees Objection Hrg [Doc. No. 3-1] 8:20–9:1. The Bankruptcy Court, however, did not further address the propriety of the Trustee's brining the claims when it approved the fees.

use any surplus property in the estate to reimburse Mr. Skubal for paying off her student loans, and therefore Mr. Skubal was a party in interest with standing to assert an objection to the fee application. The Bankruptcy Court denied the Motion to Reconsider on the grounds that (1) Mr. Skubal lacked standing to bring the original objection because he "is neither a creditor nor a guarantor of the Debtor, and he has not filed any claims against the estate and therefore lacks standing;" (2) Ms. Skubal forfeited her right to object by failing to join the original objection, and she could not cure that forfeiture by joining in the Motion to Reconsider; and (3) the Motion to Reconsider addressed only the standing issue and did not address the Bankruptcy Court's decision on the merits of the fee application. Order Denying Motion to Reconsider [BK Doc. No. 108]. In this appeal, Appellants appealed only the Bankruptcy Court's August 8, 2017 Order Denying Motion to Reconsider [BK Doc. No. 108]. Appellants have not appealed the original Final Report Order [BK Doc. No. 102] or the Bankruptcy Court's original order on the Clams Objections.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59, as incorporated by Federal Rule of Bankruptcy Procedure 9023, allows three grounds for amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Bankruptcy Court considered these grounds when reviewing Appellants' Motion to Reconsider. *See* Order Deny Motion to Reconsider. On appeal, this Court therefore reviews the Bankruptcy Court's denial of a motion to reconsider for abuse of discretion. *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

# III. ANALYSIS

### a. The Bankruptcy Court did not abuse its discretion in denying the Motion to Reconsider.

The Bankruptcy Court did not abuse its discretion in denying Appellants' motion to reconsider its ruling that Mr. Skubal lacked standing to make an objection to the fee application. To have standing in a bankruptcy proceeding, a person or entity must be a party in interest; or "a person[] whose pecuniary interests are directly affected by the bankruptcy proceedings." *Yadkin Valley Bank & Trust Co. v. McGee*, 5 F.3d 750, 756 (4th Cir. 1993); *see* 11 U.S.C. § 1109(b) (granting the right to be heard to any "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee"); *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) (relying on the Fourth Circuit's *Yadkin* opinion to hold that the "concept [is] implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in" the proceedings) (cited in *In re Alexandria Surveys Intern., LLC*, 500 B.R. 817, 820, No. 1:13-cv-891 (E.D. Va. Nov. 7, 2013)).

Here, Mr. Skubal is not the debtor and has not filed any claim against the estate; and his status as Ms. Skubal's father is not sufficient to make him a party in interest under the Bankruptcy Code or confer on him Article III standing. *See Kelly v. Herrell*, 602 Fed. App'x 642 (7th Cir. 2015) (holding that the father of a debtor lacks standing where he has not filed a claim and there is no indication from the record that he is a creditor). Rather, Mr. Skubal's standing argument rests on his daughter's oral promise to repay him for her student loans out of any potential surplus property left in the estate. However, as the Bankruptcy Court correctly observed, Ms. Skubal is under no apparent legal obligation to repay Mr. Skubal; and Mr. Skubal has not asserted this oral promise as a claim in the bankruptcy proceedings below. Order

Denying Motion to Reconsider 2. In their brief, Appellants argue that the Bankruptcy Court applied an erroneously narrow definition of "party in interest" that was at odds with its essential substance as "an expandable concept depending on the particular factual context in which it is applied." Appellants' Br. 22. While "[t]he term 'party in interest' is broadly interpreted, [it is] not infinitely expansive." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y 1997). Based on all the facts and circumstances, the Bankruptcy Court did not abuse its discretion in denying the Motion to Reconsider on the grounds that Mr. Skubal did not have had standing as a party in interest. Nor did the Bankruptcy Court abuse its discretion in rejecting Mr. Skubal's standing argument without an evidentiary hearing as to whether Mr. Skubal had an enforceable claim against Ms. Skubal.[10]

      b.    **The actions of the Trustee.**

The merits of this appeal aside, the record raises a substantial issue that the Court cannot ignore concerning whether the Trustee's conduct in administering the estate was consistent with his duties. A chapter 7 trustee's duties include "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible *with the bests interests of the parties in interest[.]*" 11 U.S.C. § 704(a)(1) (emphasis added); *see also* § 704(a)(5)(a chapter 7 trustee may, "*if a purpose would be served*, examine proofs of claims and object to the allowance of any claim that is improper[.]")(emphasis added). Overall, a bankruptcy trustee has a duty to balance the goal of liquidation with "the best interests of the parties in interest," including the debtor. *See* 11 U.S.C. § 1109(b) (indicating that the debtor is a

---

[10] Although the Appellants attempt to challenge in this appeal the amount of the fees that the Bankruptcy Court awarded, that issue is not properly before the Court because the Appellants did not raise it in their Motion to Reconsider and the Bankruptcy Court did not need to address it in the Order that is under review. The fact that the Appellants did not present this issue in their Motion to Reconsider serves as additional grounds supporting the Bankruptcy Court's Order affirming the fees award, and renders any potential error regarding Mr. Skubal's standing harmless since even if this Court were to reverse the Bankruptcy Court with respect to standing, the fees award order would nonetheless remain unaffected.

11

"party in interest" under the bankruptcy code). These principles make obvious that a chapter 7 trustee's duties do not allow him to use the powers conferred upon him primarily for the purpose of personally benefitting. And while a trustee's interest in his commission does not ordinarily call into question his decision to pursue claims, "there must be some reason, other than to increase the trustee's fees," for the filing of each claim. *In re McLaughlin*, No. 05-63927, 2007 WL 2571943 at *3 (Bankr. N.D. Ohio, Aug. 31, 2007), (citing *In re Thomas*, 2005 Bankr. LEXIS 3033, at *13 (Bankr. E.D. Va. 2005)); *see also*, *Drew v. Royal*, 256 B.R. 799 (B.A.P. 10th Cir. 2001); *In re Nettles*, 251 B.R. 899 (Bankr. M.D. Fla. 2000). Indeed, Courts have denied requests by trustees to be represented by their own firms to avoid even the appearance of such self-enrichment by the trustee at the expense of the estate. *See In re Wolfson*, 575 F.R. 522, 524 (Bankr. D. Colo. 2017) (citing *Knapp v. Selgison*, 361 F.2d 164, 168–69 (2d Cir. 1966) (Friendly, J.) ("The conduct of bankruptcy proceedings not only should be right but must seem right.")).

Here, the record contains the Trustee's candid expressions concerning his motivation to pursue the course that he did in order to generate activity that would allow him to claim and collect a commission and legal fees out of available assets;[11] and when considered in light of the

---

[11] The Trustee characterized his own motivation for filing the claims as follows: "I don't contend I filed solely to help the debtor. The profit motive was also operative. For example, the Citi claim was discharged; so making a distribution to Citi will not help the debtor in any way. There are valuable assets available here that I would like to administer for the benefit of the creditors and administrative expenses including myself as trustee and my firm as attorney." U.S. Trustee's Objection to Claim 4 filed by Chapter 7 Trustee ¶ 14 (quoting Email from McCarthy to U.S. Trustee (May 15, 2014) [BK Doc. No. 47-2]). Similarly, at the hearing on the Claims Objections, the Trustee described this bankruptcy as "one of those rare cases where there are enough assets to pay, [but] not enough claims filed during the regular claims period." Claims Objections Hrg 28:20–22; *see also id.* at 31:3–5 (the Trustee confirming his e-mail to the U.S. Trustee that he "wanted to pay valid claims and make money at the same time."); *id.* at 22:15–19 (where the U.S. Trustee references how "the trustee made the decision not to file a claim on behalf of Bank of America but chose to file proofs of claim on behalf of the student loan company and [Midland], in part, because those would . . . justify administration of the estate.").

nature of the claims filed and pursued by the Trustee, the record raises a substantial question whether he acted in a manner consistent with his duties to the parties in interest.[12]

The Trustee, as all officers of the Court, is subject to the Court's supervisory powers, and its enforcement of ethical, professional and legal obligations, separate and apart from the merits of any particular matter. *See*, e.g., *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (holding that a court has general supervisory powers over the attorneys before it, including the power to disqualify an attorney for a conflict of interest). This Court, as well as the Bankruptcy Court, has the general authority to "discipline or sanction an attorney . . . appearing before it for . . . misconduct." Fed. R. Bankr. P. 8020(b). The Bankruptcy Court likewise has the general authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

In ruling on the Claims Objections, the Bankruptcy Court found that there was a benefit to the debtor in the Trustee's bringing the ACS Claim; and in ruling on the Fees Objection, the Bankruptcy Court reviewed and approved the Trustee's fee application and his law firm's legal fees. However, the Bankruptcy Court did not explicitly consider or rule on whether the benefit to be derived from the Trustee's decision to file and pursue claims on behalf of creditors who did not file claims was outweighed by the harm imposed on the parties in interest, including the debtor and Mr. Skubal. The Court makes no findings with respect to these issues, as the Bankruptcy Court is in a far better position than this Court to consider in this first instance whether the Trustee violated his duties to the parties in interest by pursuing claims primarily to generate fees for himself and his law firm.. The proper course, therefore, is to remand this matter

---

[12] While the Bankruptcy Court held that Mr. Skubal was not a party in interest with standing to file the Fees Objection, it recognized him as a party in interest at the time of the Claims Objections in light of his joint tenancy in the Properties, which made up the bulk of the assets of the estate available to pay the claims.

to the Bankruptcy Court to consider explicitly whether the Trustee acted in "the best interests of the parties in interest" and if not, the appropriate remedy.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court did not abuse its discretion in denying Appellants' Motion to Reconsider [BK Doc. No. 104] and the Order of the Bankruptcy Court [BK Doc. No. 108] is AFFIRMED; and this matter is REMANDED to the Bankruptcy Court for further proceedings consistent with this Order.

The Clerk is directed to forward Copies of this Order to all counsel of record.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
May 16, 2018